**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3092-19

JAMES C. LAWRENCE,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

SKY ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
BUCKINGHAM INVESTMENT
GROUP, INC. d/b/a SKY ZONE
LAKEWOOD, and RPSZ
CONSTRUCTION, LLC,

     Defendants-Appellants/
     Cross-Respondents,

and

FUN SPOT MANUFACTURING,
LLC, INTERNATIONAL
ASSOCIATION OF TRAMPOLINE
PARKS, INC. (Discovery Only),
and AMERICAN SOCIETY FOR
TESTING AND MATERIALS d/b/a
ASTM INTERNATIONAL,
(Discovery Only),

Submitted March 15, 2021 – Decided March 30, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2149-19.

Chazen & Chazen, LLC, attorneys for respondent/cross-appellant (David K. Chazen, of counsel and on the briefs).

Wood Smith Henning & Berman, LLP, attorneys for appellants/cross-respondents (Kelly A. Waters, of counsel and on the briefs; Samuel G. John and Carolynn A. Mulder, on the briefs).

Cohen, Placitella & Roth, P.C. attorneys for amicus curie New Jersey Association for Justice (Jared M. Placitella and Christopher M. Placitella, of counsel and on the briefs).

PER CURIAM

Sky Zone, LLC, Sky Zone Franchise Group, LLC, Circustrix Holdings, LLC, Buckingham Investment Group, Inc. (d/b/a Sky Zone Lakewood), and RPSZ Construction, LLC (collectively defendants), appeal from a March 30, 2020 order denying reconsideration of a December 20, 2019 order denying their motion to dismiss plaintiff's first amended complaint and compel arbitration. The judge altered his earlier finding that the unavailability of JAMS rendered the agreement unenforceable but concluded that the agreement still lacked

mutual assent because it did not adequately explain what replaced a jury. Defendants generally maintain that the law only requires that plaintiff understand he waived a jury.

Plaintiff cross-appeals from the March 30, 2020 order contending that the judge erroneously changed his mind about JAMS. Plaintiff primarily maintains that the agreement is unenforceable because, despite the designation that the arbitration would be administered by JAMS utilizing its rules, JAMS itself is an unavailable arbitration forum in New Jersey. Thus, plaintiff argues, there was no meeting of the minds. The New Jersey Association for Justice (NJAJ), participating as amici, also argues that there was no meeting of the minds.

On these motions, the parties and the judge focused on whether the agreement adequately explained the ramifications of a jury waiver, particularly addressing whether it sufficiently referenced the rights that replaced the jury. That made sense because, at the time, they attempted to apply our decision in Flanzman.[1] But since the issuance of the orders, the Supreme Court reversed

---

[1] Flanzman v. Jenny Craig, Inc., 456 N.J. Super. 613 (App. Div. 2018).

A-3092-19

our opinion,[2] which directly impacts our adjudication of the issues on appeal.[3] The parties did not make arbitrating the dispute utilizing JAMS and its rules an integral term to the agreement, which contained a severability clause indicating that if one term is unenforceable, the rest of the agreement will not be affected. The automatic application of the New Jersey Arbitration Act (NJAA)[4] supplies the missing terms about the arbitration process, as does the Federal Arbitration Act (FAA),[5] which the agreement generally references.[6] We therefore reverse.

I.

Before entering the indoor trampoline facility, plaintiff was required to execute a six-page release agreement entitled "Participation Agreement, Release and Assumption of Risk" (Release Agreement). The Release Agreement generally required him to release the facility from liability, assume the risk of using the trampolines and other equipment, and waive certain rights, such as his

---

[2] Flanzman v. Jenny Craig, Inc., 244 N.J. 119 (2020).

[3] The parties and amici submitted supplemental briefs since the Court rendered its decision in Flanzman.

[4] New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36.

[5] Federal Arbitration Act, 9 U.S.C. §§1-16.

[6] See e.g., 9 U.S.C. § 5 (providing for the appointment of an arbitrator), id. § 7 (addressing witnesses, documents, fees, and the power to issue a summons).

right to a jury trial by agreeing to arbitrate covered disputes. The Release

Agreement reads as follows:

**ARBITRATION OF DISPUTES; TIME LIMIT TO BRING CLAIM**

I understand that by agreeing to arbitrate any dispute as set forth in this section, I am waiving my right, and the right(s) of the minor child(ren) above, to maintain a lawsuit against SZ and the other Releasees for any and all claims covered by this Agreement. By agreeing to arbitrate, I understand that I will **NOT** have the right to have my claim determined by a jury, and the minor child(ren) above will **NOT** have the right to have claim(s) determined by a jury. Reciprocally, SZ and the other Releasees waive their right to maintain a lawsuit against me and the minor child(ren) above for any and all claims covered by this Agreement, and they will not have the right to have their claim(s) determined by a jury. **ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO MY OR THE CHILD'S ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) FOR AN ADULT AND WITHIN THE APPLICABLE STATUTE OF LIMITATIONS FOR A MINOR AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY, NEW JERSEY, BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE**

5

> **AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION.** This Agreement shall be governed by, construed and interpreted in accordance with the laws of the State of New Jersey, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the [FAA] (9 U.S.C., Sec. 1-16). I understand and acknowledge that the JAMS Arbitration Rules to which I agree are available online for my review at jamsadr.com, and include JAMS Comprehensive Arbitration Rules & Procedures; Rule 16.1 Expedited Procedures; and, Policy On Consumer Minimum Standards of Procedural Fairness.
>
> [Emphasis in original.]

It is undisputed that JAMS could not administer the arbitration proceeding. Consequently, that part of the agreement was unenforceable. The severance provision provides that

> [i]f any term or provision of this Release shall be illegal, unenforceable, or in conflict with any law governing this Release[,] the validity of the remaining portions shall not be affected thereby.

In entering the orders under review, and guided by our <u>Flanzman</u> decision, the judge concluded the agreement was unenforceable for lack of mutual assent because the parties did not fully understand what rights replaced the jury.

6

## II.

On appeal, defendants raise the following arguments, which we have re-numbered, for our consideration:

[POINT I]

THE [MOTION JUDGE] ERRED IN HOLDING THAT THE ARBITRATION CLAUSE IS UNENFORCEABLE BECAUSE IT DOES NOT EXPLAIN OR SUMMARIZE THE ARBITRATION RULES.[7]

[POINT II]

THE [MOTION JUDGE] CORRECTLY HELD THAT THE UNAVILABILITY OF JAMS IS IMMATERIAL TO THE ENFORECEABILITY OF THE ARBITRATION PROVISION.

    A. FEDERAL LAW PROVIDES FOR COURT APPOINTMENT OF AN ARBITRATOR AND PREEMPTS ANY CONTRARY STATE LAW.

    B. NEW JERSEY LAW PROVIDES FOR COURT APPOINTMENT OF AN ARBITRATOR.

    C. THE ARBITRATION AGREEMENT AT ISSUE HERE REQUIRES

---

[7] We need not reach this contention because JAMS itself was unavailable to administer the arbitration. Whether plaintiff had the opportunity to read the JAMS rules, therefore, is academic: JAMS could not arbitrate the dispute regardless.

A-3092-19

ARBITRATION EVEN IF JAMS IS UNAVAILABLE.

[POINT III]

THE [MOTION JUDGE] ERRED IN HOLDING THAT ARBITRATION AGREEMENTS MUST SUMMARIZE OR PROVIDE A COPY OF THE ARBITRATION RULES.

[POINT IV]

PLAINTIFF'S SUBSTANTIVE OBJECTIONS TO THE JAMS RULES LACK MERIT AND ARE IMMATERIAL TO THE ENFORCEABILITY OF THE ARBITRATION CLAUSE. (Not Ruled on Below).

A. PARTIES MAY AGREE TO LIMIT DISCOVERY AND OTHER PROCEDURES IN THEIR ARBITRATION AGREEMENT.

B. LIKE THE NEW JERSEY COURT RULES, THE JAMS RULES CONTAIN APPROPRIATE SAFEGUARDS AND FLEXIBILITY.

C. EVEN IF PLAINTIFF'S OBJECTIONS TO THE JAMS RULES HAD MERIT, THEY ARE IMMATERIAL BECAUSE ARBITRATION CLAUSES ARE SEVERABLE AS A MATTER OF LAW.

[POINT V]

THE [MOTION JUDGE] CORRECTLY HELD THAT THE UNAVAILABILITY OF JAMS DOES NOT

8

AFFECT THE VALIDITY OF THE ARBITRATION CLAUSE BECAUSE JAMS IS NOT INTEGRAL TO THE AGREEMENT TO ARBITRATE.

A. NEW JERSEY LAW REQUIRES COURT-APPOINTMENT OF AN ARBITRATOR EVEN THOUGH JAMS IS UNAVAILABLE.

B. EVEN IF PLAINTIFF'S POSITION REGARDING NEW JERSEY LAW WERE CORRECT, FEDERAL LAW WOULD PREEMPT NEW JERSEY LAW AND REQUIRES COURT-APPOINTMENT OF AN ARBITRATOR.

[POINT VI]

PLAINTIFF'S RELIANCE ON UNREPORTED DECISIONS IS UNAVAILING AND PROCEDURALLY IMPROPER.

[POINT VII]

PLAINTIFF'S ARGUMENT REGARDING THE TRUTH-IN-CONSUMER CONTRACTS, WARRANTY, AND NOTICE ACT IS WITHOUT MERIT.

[POINT VIII]

PLAINTIFF'S ARGUMENT REGARDING NON-SIGNATORIES IS WITHOUT MERIT.

[POINT IX]

9

THE ALLEGED FAILURE TO EXPLAIN THE JAMS RULES HAS NO EFFECT ON THE ARBITRATION AGREEMENT'S VALIDITY.

[POINT X]

THE UNAVAILABILITY OF JAMS HAS NO EFFECT ON THE ARBITRATION AGREEMENT'S VALIDITY.

[POINT XI]

NJAJ IMPROPERLY RELIES ON IMMATERIAL AND UNSUPPORTED ARGUMENTS THAT WERE NOT RAISED BELOW.

[PONT XII]

IN SKUSE,[8] THE NEW JERSEY SUPREME COURT REAFFIRMED THE FAA'S EQUAL-FOOTING PRINCIPLE AND APPLIED GENERAL CONTRACT LAW.

[POINT VIII]

IN SKUSE, THE NEW JERSEY SUPREME COURT HELD THAT PLAINTIFFS BEAR THE BURDEN OF OBTAINING AND REVIEWING AVAILABLE INFORMATION.

On his cross-appeal, plaintiff raises the following contentions, which we have re-numbered:

[POINT I]

---

[8] Skuse v. Pfizer, Inc., 244 N.J. 30 (2020).

A-3092-19

THE [MOTION JUDGE] CORRECTLY HELD THE ARBITRATION PROVISION TO BE UNENFORCEABLE BECAUSE THE JAMS RULES WERE "UNACCESSIBLE[,]" THE ARBITRATION PROVISION "DOES NOT EXPLAIN THE RULES[,]" AND "BECAUSE IT LACKS A MEETING OF THE MINDS.["]

[POINT II]

THE [MOTION JUDGE] HELD CORRECTLY THAT THE DESIGNATION OF JAMS AS THE EXCLUSIVE ARBITRAL FORUM AND ITS UNAVAILABILITY MEANT THAT THERE WAS NO MEETING OF THE MINDS BETWEEN THE PARTIES AND THE ARBITRATION CLAUSE IS UNENFORCEABLE[;] THE [MOTION JUDGE] ERRED UPON RECONSIDERATION IN HOLDING THAT THE UNAVAILABILITY OF JAMS WAS NOT SO INTEGRAL TO THE ARBITRATION CLAUSE TO RENDER IT UNENFORCEABLE.

[POINT III]

DIVERGENT COURT OPINIONS HAVE LEFT THE VALIDITY OF THE SKY ZONE ARBITRATION CLAUSE UNSETTLED.

[POINT VI]

DISMISSAL OF THE FIRST AMENDED COMPLAINT WOULD BE IMPROPER BECAUSE NON-SIGNATORIES TO THE AGREEMENT CANNOT BE COMPELLED TO ARBITRATE.

[POINT V]

THE SKY ZONE ARBITRATION AGREEMENT CONTAINS MATERIAL DISCREPANCIES ESSENTIAL TO A CONSUMER WAIVER-OF-RIGHTS NEGATING A MEETING OF THE MINDS.

[POINT VI]

SKY ZONE CLAIMS SUBJECT TO ARBITRATION UNDER THE JAMS RULE 16.1 EXPEDITED PROCEDURES AND RULES ARE AN EXAMPLE OF INDUSTRY-WIDE CONTRACTS OF ADHESION.[9]

[POINT VII]

FLANZMAN HOLDS THAT THE NJAA PROVIDES A DEFAULT PROCEDURE WHEN PARTIES OMIT THE TERMS FOR SELECTION OF THE ARBITRATOR AND THE ARBITRATION PROCESS—BUT DISTINGUISHES THE HOLDING IN KLEINE WHERE THE PARTIES AGREE TO A SPECIFIC ARBITRATION ORGANIZATION AS AN ESSENTIAL TERM AND RENDER IT UNENFORCEABLE WHEN THE ARBITRATION ORGANIZATION WAS UNAVAILABLE AT THE TIME THE CONTRACT WAS EXECUTED—AS ESSENTIAL TO A CONSUMER WAIVER-OF-RIGHTS AND NEGATING A MEETING OF THE MINDS.

    A.  SKY ZONE SELECTED JAMS AS THE EXCLUSIVE ARBITRATION ORGANIZATION AND KNEW OR

---

9   There is insufficient information on this record for us to adjudicate this contention, which was not explicitly addressed by the judge, either by way of findings of fact or conclusions of law.

12

SHOULD HAVE KNOWN JAMS WAS UNAVAILABLE.

B. THE SKY ZONE ARBITRATION CLAUSE VIOLATES THE PLAIN LANGUAGE ACT AND THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY AND NOTICE ACT.

C. SKY ZONE'S SELECTION OF JAMS WAS AN ESSENTIAL/INTEGRAL CONTRACT TERM.

NJAJ, as amici, raise the following points, which we have re-numbered:

[POINT I]

THERE WAS NO ASSENT BY [PLAINTIFF] TO WAIVE HIS RIGHT TO A JURY TRIAL SO THE [MOTION JUDGE] CORRECTLY HELD THAT HE CANNOT BE COMPELLED TO ARBITRATION.

A. THE ARBITRATION AGREEMENT HERE FAILS TO EXPLAIN TO THE CONSUMER THE RAMIFICATIONS OF SURRENDERING HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL.

B. THE ARBITRATION AGREEMENT FAILED TO PROVIDE AND EXPLAIN THE JAMS EXPEDITED ARBITRATION RULES, AND ITS MERE REFERENCE TO THOSE PROCEDURES PREVENTED ANY MEETING OF THE MINDS.

13

C. THE ARBITRATION AGREEMENT IS CONTRADICTORY, CONFUSING AND VIOLATES NEW JERSEY'S PLAIN LANGUAGE ACT.

[POINT II]

THE [MOTION JUDGE] ERRED IN [HIS] DICTUM STATEMENT THAT [HE] COULD APPOINT AN ARBITRAL FORUM NOT CONTEMPLATED BY THE PARTIES BECAUSE THAT WOULD INAPPROPRIATELY RE-WRITE THE PARTIES' AGREEMENT.

[POINT III]

THE [MOTION JUDGE] CORRECTLY HELD THAT [PLAINTIFF] CANNOT BE COMPELLED TO ARBITRATION BECAUSE [SKY ZONE'S] AGREEMENT FAILS TO CLEARLY AND UNMISTAKABLY EXPLAIN THAT HE WAS SURRENDERING HIS RIGHT TO A JURY TRIAL AND THE RAMIFICATIONS FOR DOING SO.

[POINT IV]

THE [MOTION JUDGE] CORRECTLY HELD THAT [PLAINTIFF] CANNOT BE COMPELLED TO ARBITRATE BECAUSE THE CONFUSING AND CONTRADICTORY LANGUAGE OF [SKY ZONE'S] AGREEMENT FAILED TO ASSURE HIS MUTUAL ASSENT.

[POINT V]

FLANZMAN REQUIRES THAT ARBITRATION CANNOT BE COMPELLED HERE BECAUSE SKY ZONE LLC'S SELECTED ARBITRAL FORUM AND

14

PROCESS WAS NEVER AVAILABLE TO THE PARTIES AND THUS THERE WAS NO MUTUAL ASSENT TO ARBITRATE.

III.

We begin by addressing the judge's conclusion that the agreement was unenforceable for lack of mutual assent. The judge undertook a careful analysis of whether there existed a meeting of the minds; specifically, whether the parties understood what rights replaced the jury.

The judge reached his conclusion by relying on our appellate opinion in Flanzman, where we quoted both Atalese v. U.S. Legal Serv. Group, L.P., 219 N.J. 430, 443-45 (2014) and NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 425 (App. Div. 2011), explaining that " [judges] take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent." Flanzman, 456 N.J. Super at 621. And like us, the judge cited Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 552-53 (App. Div. 2016), where this court determined that to clearly understand the ramifications of waiving a jury, a party "must be able to understand—from clear and unambiguous language—both the rights that have been waived and the rights that have taken their place." Flanzman, 456 N.J. Super. at 622 (citing Kleine, 445 N.J. Super. at 552-53). That is because the

15

Supreme Court explained that the word "arbitration" is not self-defining. See Kernahan v. Home Warranty Admin., 236 N.J. 308, 332-33 (2019); Morgan v. Sanford Brown Inst., 225 N.J. 289, 308 (2016); Atalese, 219 N.J. at 442. We understood "ramifications of the assent" to mean not just the rights parties gave up but also the rights the parties received in their place. The Supreme Court disagreed with our understanding and clarified that "ramifications" referred only to waiving a jury, rather than also understanding what replaced the jury.

Unlike Flanzman, where the parties omitted any reference to what replaced the jury, the parties' agreement here incorporated that information. Even if they had not, the Court has since explained a general reference to the arbitration process governing the dispute is not a material term; failure to reference it does not impact enforceability; and instead, the NJAA will fill in the missing information. Flanzman, 244 N.J. at 136-39. The Court agreed—to add clarity—it would be advantageous, sound, and practical for parties to "designate in their agreement an arbitral organization" and "an alternative method of choosing an organization" should the parties' primary choice be unavailable. Id. at 140. By doing so, the parties would then understand what to expect during the arbitration. But the Court concluded the information was not essential to the arbitration agreement.

16

The judge determined that the agreement was unenforceable for lack of mutual assent because what the parties had contracted for—JAMS arbitrating the dispute—could not occur. He found, therefore, that they did not reach a meeting of the minds about what replaced the jury. Applying the Court's decision in Flanzman, and Arafa v. Health Express Corp., 243 N.J. 147 (2020),[10] we reach a different conclusion.

IV.

We conclude the agreement meets the requirements established in Atalese, and therefore there exists mutual assent to arbitrate. The parties clearly understood the ramifications of such assent because the agreement itself explains that the parties have waived a jury. The unavailability of JAMS is not fatal to the enforceability of the agreement, especially because the agreement contains a severability clause. And even without the severability clause, under Flanzman and Arafa, the NJAA will fill in the arbitration process details.

As evidence that the parties did not make JAMS integral to the arbitration process, we turn to the language of the agreement that identified the NJAA and FAA.

---

[10] The orders under review were issued before the Court rendered its opinion in Arafa.

A-3092-19

> This Agreement shall be governed by, construed and interpreted in accordance with the laws of the State of New Jersey, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the [FAA] (9 U.S.C., Sec. 1-16).

The parties' agreement did not make arbitration solely dependent on the availability of JAMS. Instead, it included a severability clause and specifically identified the NJAA and FAA.

In 2002, our Legislature enacted the NJAA to advance arbitration as an alternative to litigation and to clarify arbitration procedures. Flanzman, 214 N.J. at 133-34. The NJAA is a modified version of the Uniform Act,[11] which itself is a default statute, meaning that statutory provisions can be varied or waived by contract. Indeed, the NJAA is a modified default statute, as reflected by its legislative history. See Assemb. Judiciary Comm. Statement to S. 514 1 (stating that "[t]his bill is a modified version of the Uniform Arbitration Act of 2000 . . . as proposed by the National Conference of Commissioners on Uniform State Laws").

---

[11] The Revised Uniform Arbitration Act, Rev. Unif. Arb. Act §§ 1-31 (2000), updated and modified the Uniform Arbitration Act, Unif. Arb. Act §§ 1-25 (1955).

18                                                                        A-3092-19

In Flanzman, the automatic application of the NJAA permitted the appointment of an arbitrator, Flanzman, 224 N.J. at 141 (citing N.J.S.A. 2A:23B-11(a)),[12] and provided the general framework of the arbitration process, ibid. (citing N.J.S.A. 2A:23B-15).  As to these two points, the same is true here. Flanzman is not the first instance where the Supreme Court utilized the NJAA to fill in missing terms in arbitration agreements.  In July of last year, the Court decided Arafa, a case in which the parties identified in their agreement the FAA as the governing law, then later discovered that the FAA could not control.  243 N.J. at 166 (noting that "it is undisputed that Section 1 [of the FAA] applies" to Arafa, which exempts employees and independent contractors involved in interstate commerce from the FAA).  The Court applied the NJAA and filled in the missing terms addressing the arbitration process.  Id. at 167.  In Arafa, the Court concluded that the NJAA applies automatically, as it does here.

To summarize: the arbitration agreement satisfies Atalese; the provision that JAMS arbitrate the dispute is unenforceable because JAMS is not available; the severability clause renders the rest of the agreement enforceable; and the NJAA will fill in the missing term as to the arbitration process.  We therefore

---

[12]  The FAA has a similar provision.  See 9 U.S.C. § 5.

reverse and remand, directing the parties to the arbitration agreement proceed to arbitration.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3092-19